

# Performance Bond

## AIA Document A312 - Electronic Format

---

**THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES: CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.**

Any singular reference to Contract, Surety, Owner or Other Party Shall be considered plural where applicable.

BOND NUMBER: 103316488

**CONTRACTOR** (Name and Address):
ODF/HOON/PEABODY, Joint Venture
1960 Washington Street
Boston, Massachusetts 02108

**OWNER** (Name and Address):
MASSACHUSETTS HOUSING FINANCE AGENCY
One Beacon Street
Boston, Massachusetts 02108

**SURETY** (Name and Principal Place of Business)
TRAVELERS CASUALTY AND SURETY COMPANY
OF AMERICA
300 Crown Colony Drive
Quincy, Massachusetts 02169

**CONSTRUCTION CONTRACT**
Date: January 19, 2001
Amount: $45,367,275.00
Description (Name and Location): MHFA PROJECT #96-006
ACADEMY HOMES II, Boston, Massachusetts

**BOND**
Date (Not earlier than Construction Contract Date): January 19, 2001
Amount: $45,367,275.00
Modifications to this Bond:  [X] None     [ ] See Page

**CONTRACTOR AS PRINCIPAL**
Company:                                (Corporate Seal)
ODF/HOON/PEABODY, Joint Venture

Signature: _____
Name and Title: EDWARD A. FISH, JR., President

**SURETY**
Company:                                (Corporate Seal)
TRAVELERS CASUALTY AND SURETY COMPANY
OF AMERICA

Signature: _____
Name and Title: DEBRA J. HIGDON, Attorney-in-Fact

(Any additional signatures appear on the last page)

(FOR INFORMATION ONLY - Name, Address and Telephone)

---

**AGENT or BROKER:**
OLDE BAY INSURANCE AGENCY, INC.
6 City Square, P.O. Box 290788
Boston, MA. 02129
(617) 242-2800

**OWNER'S REPRESENTATIVE** (Architect, Engineer or other party):

A DOCUMENT A312· PERFORMANCE BOND AND PAYMENT BOND · DECEMBER 1984 ED. · AIA © · THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C., 20006-5292 · THIRD PRINTING · MARCH 1987. WARNING: Unlicensed photocopying violates U.S. copyright laws and is subject to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.
Electronic Format A312
User Document: A312.DOC -- 1/4/2000. AIA License Number 105821, which expires on 9/6/2000

1   The Contractor and the Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner for the performance of the Construction Contract, which is incorporated herein by reference.

2   If the Contractor performs the Construction Contract, the Surety and the Contractor shall have no obligation under this Bond, except to participate in conferences as provided in Subparagraph 3.1.

3   If there is no Owner Default, the Surety's obligation under this Bond shall arise after:

   3.1 The Owner has notified the Contractor and the Surety at its address described in Paragraph 10 below that the Owner is considering declaring a Contractor Default and has requested and attempted to arrange a conference with the Contractor and the Surety to be held not later than fifteen days after receipt of such notice to discuss methods of performing the Construction Contract. If the Owner, the Contractor and the Surety agree, the Contractor shall be allowed a reasonable time to perform the Construction Contract, but such an agreement shall not waive the Owner's right, if any, subsequently to declare a Contractor Default; and

   3.2 The Owner has declared a Contractor Default and formally terminated the Contractor's right to complete the contract. Such Contractor Default shall not be declared earlier than twenty days after the Contractor and the Surety have received notice as provided in Sub-paragraph 3.1; and

   3.3 The Owner has agreed to pay the Balance of the Contract Price to the Surety in accordance with the terms of the Construction Contract or to a contractor selected to perform the Construction Contract in accordance with the terms of the contract with the Owner.

4   When the Owner has satisfied the conditions of Paragraph 3, the Surety shall promptly and at the Surety's expense take one of the following actions:

   4.1 Arrange for the Contractor, with consent of the Owner, to perform and complete the Construction Contract; or

   4.2 Undertake to perform and complete the Construction Contract itself, through its agents or through independent contractors; or

   4.3 Obtain bids or negotiated proposals from qualified contractors acceptable to the Owner for a contract for performance and completion of the Construction Contract, arrange for a contract to be prepared for execution by the Owner and the contractor selected with the Owner's concurrence, to be secured with performance and payment bonds executed by a qualified surety equivalent to the bonds issued on the Construction Contract, and pay to the Owner the amount of damages as described in Paragraph 6 in excess of the Balance of the Contract Price incurred by the Owner resulting from the Contractor's default; or

   4.4 Waive its right to perform and complete, arrange for completion, or obtain a new contractor and with reasonable promptness under the circumstances:

      .1 After investigation, determine the amount for which it may be liable to the Owner and, as soon as practicable after the amount is determined, tender payment therefor to the Owner; or

      .2 Deny liability in whole or in part and notify the Owner citing reasons therefor.

5   If the Surety does not proceed as provided in Paragraph 4 with reasonable promptness, the Surety shall be deemed to be in default on this Bond fifteen days after receipt of an additional written notice from the Owner to the Surety demanding that the Surety perform its obligations under this Bond, and the Owner shall be entitled to enforce any remedy available to the Owner. If the Surety proceeds as provided in Subparagraph 4.4, and the Owner refuses the payment tendered or the Surety has denied liability, in whole or in part, without further notice the Owner shall be entitled to enforce any remedy available to the Owner.

6   After the Owner has terminated the Contractor's right to complete the Construction Contract, and if the Surety elects to act under Subparagraph 4.1, 4.2, or 4.3 above, then the responsibilities of the Surety to the Owner shall not be greater than those of the Contractor under the Construction Contract, and the responsibilities of the Owner to the Surety shall not be greater than those of the Owner under the Construction Contract. To the limit of the amount of this Bond, but subject to commitment by the Owner of the Balance of the Contract Price to mitigation of costs and damages on the Construction Contract, the Surety is obligated without duplication for:

   6.1 The responsibilities of the Contractor for correction

DOCUMENT A312 · PERFORMANCE BOND AND PAYMENT BOND · DECEMBER 1984 ED. · AIA © · THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C., 20006-5292 · THIRD PRINTING · MARCH 1987. WARNING: Unlicensed photocopying violates U.S. copyright laws and is subject to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

Electronic Format A312-1984

User Document: A312.DOC — 1/4/2000. AIA License Number 105821, which expires on 9/6/2000 — Page #2

of defective work and completion of the Construction Contract;

6.2 Additional legal, design professional and delay costs resulting from the Contractor's Default, and resulting from the actions or failure to act of the Surety under Paragraph 4; and

6.3 Liquidated damages, or if no liquidated damages are specified in the Construction Contract, actual damages caused by delayed performance or non-performance of the Contractor.

7 The Surety shall not be liable to the Owner or others for obligations of the Contractor that are unrelated to the Construction Contract, and the Balance of the Contract Price shall not be reduced or set off on account of any such unrelated obligations. No right of action shall accrue on this Bond to any person or entity other than the Owner or its heirs, executors, administrators, or successors, grantees or assignees.

8 The Surety hereby agrees that it consents to and waives notice of any addition, alteration, omission, change, including changes of time, or other modification, to the Construction Contract or to related subcontracts, purchase orders and other obligations. Any additional alteration, change, extension of time, or other modification of the Construction Contract or to related subcontracts, purchase orders and other obligations, or forbearance on the part of the Owner, the Contractor, or any other party, shall not release the surety of its obligations hereunder, and notice to the surety of such matters is hereby waived.

9 Any proceeding, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction in the location in which the work or part of the work is located and shall be instituted within two years after Contractor Default or within two years after the Contractor ceased working or within two years after the Surety refuses or fails to perform its obligations under this Bond, whichever occurs first. If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

10 Notice to the Surety, the Owner or the Contractor shall be mailed or delivered to the address shown on the signature page.

11 When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted here from and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. The intent is that this Bond shall be construed as a statutory bond and not as a common law bond.

12 DEFINITIONS

12.1 Balance of the Contract Price: The total amount payable by the Owner to the Contractor under the Construction Contract after all proper adjustments have been made, including allowance to the Contractor of any amounts received or to be received by the Owner in settlement of insurance or other claims for damages to which the Contractor is entitled, reduced by all valid and proper payments made to or on behalf of the Contractor under the Construction Contract

12.2 Construction Contract: The agreement between the Owner and the Contractor identified on the signature page, including all Contract Documents and changes thereto.

12.3 Contractor Default: Failure of the Contractor, which has neither been remedied nor waived, to perform or otherwise to comply with the terms of the Construction Contract.

12.4 Owner Default: Failure of the Owner, which has neither been remedied nor waived, to pay the Contractor as required by the Construction Contract or to perform and complete or comply with the other terms thereof.

A DOCUMENT A312- PERFORMANCE BOND AND PAYMENT BOND · DECEMBER 1984 ED. · AIA ®· THE AMERICAN INSTITUTE OF ACHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C., 20006-5292 · THIRD PRINTING · MARCH 1987. WARNING: Unlicensed photocopying violates U.S. copyright laws and is subject to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

Electronic Format A312-1984

User Document: A312.DOC -- 1/4/2000. AIA License Number 105821, which expires on 9/6/2000 -- Page #3

## MODIFICATIONS TO THIS BOND ARE AS FOLLOWS:

(Space is provided below for additional signatures of added parties, other than those appearing on the cover page.)

| CONTRACTOR AS PRINCIPAL | | SURETY | |
|---|---|---|---|
| Company: | (Corporate Seal) | Company: | (Corporate Seal) |

Signature: _____     Signature: _____
Name and Title:                        Name and Title:

A DOCUMENT A312- PERFORMANCE BOND AND PAYMENT BOND • DECEMBER 1984 ED. • AIA ©- THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C., 20006-5292 • THIRD PRINTING • MARCH 1987. WARNING: Unlicensed photocopying violates U.S. copyright laws and is subject to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.                                    Electronic Format A312-1984

User Document: A312.DOC – 1/4/2000. AIA License Number 105821, which expires on 9/6/2000 -- Page #4

# DUAL OBLIGEE RIDER

To be attached to and form part of the Performance Bond #103316488 executed concurrently with this rider, it is agreed that:

Travelers Casualty and Surety Company of America, Surety, and ODF/HOON/PEABODY, A Joint Venture, Principal, for valuable consideration, hereby agree that the Performance Bond executed in favor of MASSACHUSETTS HOUSING FINANCE AGENCY, One Beacon Street, Boston, Massachusetts 02108, Owner, in connection with a contract for MHFA PROJECT #96-006, ACADEMY HOMES II, Boston, Massachusetts, which bond and contract are made a part hereof by reference, shall now include as an Obligee with the Owner, U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT (HUD), in its capacity as a source of money to the Owner for exclusive use on the project aforesaid. This agreement is subject to the precedent condition that HUD shall have no right of action against the Principal or the Surety except such as Owner would have is suing and shall be subject to all offsets and defenses however arising which would be available against the Owner.

In no event shall the Surety be liable in the aggregate to both Obligees for more than the penal sum of its Performance Bond, nor shall it be liable except for a single payment for each single breach or default. At the Surety's election, any payment due to either Obligee may be made by its check issued jointly to both.

Neither the execution nor language of this instrument nor any previous negotiations shall be construed as relieving the Owner from the due and timely performance of such obligations and duties as the Owner may owe to the Principal or Surety under the contract or otherwise, whether or not HUD furnishes money to the Owner in the amounts agreed upon or expected.

WITNESS the following signatures and seals this 19th day of January, 2004.

ODF/HOON/PEABODY, Joint Venture (Principal) (Seal)

By Esther M. Garland (Witness) as to Principal
By EDWARD A. FISH, JR., Treasurer (Title)

TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA (Surety) (Seal)

By Marilyn Belfed (Witness) as to Surety
By DEBRA J. RIGDON, Attorney-in-Fact

MASSACHUSETTS HOUSING FINANCE AGENCY (Owner) (Seal)

By (Witness) as to Owner
By Steven D. Pierce, Executive Director (Title)

**TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA**
**TRAVELERS CASUALTY AND SURETY COMPANY**
**FARMINGTON CASUALTY COMPANY**
Hartford, Connecticut 06183-9062

## POWER OF ATTORNEY AND CERTIFICATE OF AUTHORITY OF ATTORNEY(S)-IN-FACT

KNOW ALL PERSONS BY THESE PRESENTS, THAT TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, TRAVELERS CASUALTY AND SURETY COMPANY and FARMINGTON CASUALTY COMPANY, corporations duly organized under the laws of the State of Connecticut, and having their principal offices in the City of Hartford, County of Hartford, State of Connecticut, (hereinafter the "Companies") hath made, constituted and appointed, and do by these presents make, constitute and appoint: Debra J. Rigdon, H. James Balcam, Karen J. Moorhead, of Charlestown, Massachusetts, their true and lawful Attorney(s)-in-Fact, with full power and authority hereby conferred to sign, execute and acknowledge, at any place within the United States, or, if the following line be filled in, within the area there designated _____ the following instrument(s): by his/her sole signature and act, any and all bonds, recognizances, contracts of indemnity, and other writings obligatory in the nature of a bond, recognizance, or conditional undertaking and any and all consents incident thereto and to bind the Companies, thereby as fully and to the same extent as if the same were signed by the duly authorized officers of the Companies, and all the acts of said Attorney(s)-in-Fact, pursuant to the authority herein given, are hereby ratified and confirmed.

This appointment is made under and by authority of the following Standing Resolutions of said Companies, which Resolutions are now in full force and effect:

VOTED: That the Chairman, the President, any Vice Chairman, any Executive Vice President, any Senior Vice President, any Vice President, any Second Vice President, the Treasurer, any Assistant Treasurer, the Corporate Secretary or any Assistant Secretary may appoint Attorneys-in-Fact and Agents to act for and on behalf of the company and may give such appointee such authority as his or her certificate of authority may prescribe to sign with the Company's name and seal with the Company's seal bonds, recognizances, contracts of indemnity, and other writings obligatory in the nature of a bond, recognizance, or conditional undertaking, and any of said officers or the Board of Directors at any time may remove any such appointee and revoke the power given him or her.

VOTED: That the Chairman, the President, any Vice Chairman, any Executive Vice President, any Senior Vice President or any Vice President may delegate all or any part of the foregoing authority to one or more officers or employees of this Company, provided that each such delegation is in writing and a copy thereof is filed in the office of the Secretary.

VOTED: That any bond, recognizance, contract of indemnity, or writing obligatory in the nature of a bond, recognizance, or conditional undertaking shall be valid and binding upon the Company when (a) signed by the President, any Vice Chairman, any Executive Vice President, any Senior Vice President or any Vice President, any Second Vice President, the Treasurer, any Assistant Treasurer, the Corporate Secretary or any Assistant Secretary and duly attested and sealed with the Company's seal by a Secretary or Assistant Secretary, or (b) duly executed (under seal, if required) by one or more Attorneys-in-Fact and Agents pursuant to the power prescribed in his or her certificate or their certificates of authority or by one or more Company officers pursuant to a written delegation of authority.

This Power of Attorney and Certificate of Authority is signed and sealed by facsimile under and by authority of the following Standing Resolution voted by the Boards of Directors of TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, TRAVELERS CASUALTY AND SURETY COMPANY and FARMINGTON CASUALTY COMPANY, which Resolution is now in full force and effect:

VOTED: That the signature of each of the following officers: President, any Executive Vice President, any Senior Vice President, any Vice President, any Assistant Vice President, any Secretary, any Assistant Secretary, and the seal of the Company may be affixed by facsimile to any power of attorney or to any certificate relating thereto appointing Resident Vice Presidents, Resident Assistant Secretaries or Attorneys-in-Fact for purposes only of executing and attesting bonds and undertakings and other writings obligatory in the nature thereof, and any such power of attorney or certificate bearing such facsimile signature or facsimile seal shall be valid and binding upon the Company and any such power so executed and certified by such facsimile signature and facsimile seal shall be valid and binding upon the Company in the future with respect to any bond or undertaking to which it is attached.

IN WITNESS WHEREOF, TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, TRAVELERS CASUALTY AND SURETY COMPANY and FARMINGTON CASUALTY COMPANY have caused this instrument to be signed by their Senior Vice President, and their corporate seals to be hereto affixed this 1st day of June, 2000.

STATE OF CONNECTICUT } SS. Hartford
COUNTY OF HARTFORD

TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA
TRAVELERS CASUALTY AND SURETY COMPANY
FARMINGTON CASUALTY COMPANY



By_____
George W. Thompson
Senior Vice President

On this 1st day of June, 2000 before me personally came GEORGE W. THOMPSON to me known, who, being by me duly sworn, did depose and say: that he/she is Senior Vice President of TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, TRAVELERS CASUALTY AND SURETY COMPANY and FARMINGTON CASUALTY COMPANY, the corporations described in and which executed the above instrument; that he/she knows the seals of said corporations; that the seals affixed to the said instrument are such corporate seals; and that he/she executed the said instrument on behalf of the corporations by authority of his/her office under the Standing Resolutions thereof.



Marie C Tetreault
My commission expires June 30, 2001  Notary Public
Marie C. Tetreault

**CERTIFICATE**

I, the undersigned, Assistant Secretary of TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, TRAVELERS CASUALTY AND SURETY COMPANY and FARMINGTON CASUALTY COMPANY, stock corporations of the State of Connecticut, DO HEREBY CERTIFY that the foregoing and attached Power of Attorney and Certificate of Authority remains in full force and has not been revoked; and furthermore, that the Standing Resolutions of the Boards of Directors, as set forth in the Certificate of Authority, are now in force.

Signed and Sealed at the Home Office of the Company, in the City of Hartford, State of Connecticut. Dated this 19th day of January, 2004.



By_____
Kori M. Johanson
Assistant Secretary, Bond