UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

```
_____
                                   )
LOUIS G. RASETTA and JOHN J.       )
SHAUGHNESSY, as they are TRUSTEES, )
INTERNATIONAL UNION OF OPERATING   )
ENGINEERS LOCAL 4 HEALTH AND       )
WELFARE, PENSION AND ANNUITY       )
FUNDS, and LOUIS G. RASETTA and    )
 CHRISTOPHER BARLETTA, as they     )
are TRUSTEES, HOISTING AND         )
PORTABLE ENGINEERS LOCAL 4         )
APPRENTICE AND TRAINING FUNDS and  )
INTERNATIONAL UNION OF             )
OPERATING ENGINEERS, LOCAL 4       )
          Plaintiff,               )
v.                                 )   C.A. NO. 04-12324EFH
                                   )
TRAVELERS CASUALTY AND SURETY      )
COMPANY OF AMERICA,                )
                                   )
          Defendant.               )
_____)
```

**DEFENDANT TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA'S
MEMORANDUM IN SUPPORT OF MOTION TO SET ASIDE DEFAULT AND
FOR LEAVE TO FILE ANSWER**

I.   **INTRODUCTION.**

Defendant, Travelers Casualty and Surety Company of America ("Travelers"), moves pursuant to Fed. R. Civ. P.55(c) to set aside the default entered on January 27, 2005.[1] As grounds therefore, Travelers states that "good cause" exists to set aside the entry of default and that Travelers has valid and meritorious defenses to the Plaintiff's allegations. In support of this

---

[1] Travelers is the Payment and Performance Bond surety of ODF/Hoon/Peabody, Joint Venture

motion, Travelers relies on the following facts, law, and arguments.

II.  **FACTS.**

ODF/Hoon/Peabody, Joint Venture ("Joint Venture") is a general contractor with a principal place of business at 1960 Washington Street, Boston, Massachusetts.  See Affidavit of Stephen Cirbee, Vice President, Project Management Operations, Peabody Construction Co., Inc., (hereafter "Cirbee Affidavit"), ¶2.  The Joint Venture was the general contractor for the public construction project known as "Academy Homes, II, Boston, Massachusetts" (the "Academy Homes, II Project").  ODF Contracting Co., Inc. ("ODF") was a subcontractor to the Joint Venture for site work on the Academy Homes, II Project. Cirbee Affidavit, ¶3.

During the course of the Academy Homes, II Project, ODF submitted to the Joint Venture 54-separate requisitions, starting with the period ending 2/28/01 through 5/30/03, which were inclusive of a VENDOR PAYABLE list that stated the vendors to be paid for that particular period ending and the amount to be paid to each. Cirbee Affidavit, ¶4.

Monthly, the Joint Venture staff would review the amount due to ODF, as compared to the amount to be paid to vendors for services provided on the Academy Homes, II Project, to ensure that ODF was designating sufficient funds for vendors' payments,

2

out of the payment due to ODF for the period.  Cirbee Affidavit, ¶5.  Through June 2002, ODF made payments to vendors, which were listed on the VENDOR PAYABLE List for the Academy Homes, II Project, from ODF Contracting Co., Inc. bank accounts, including but not limited to the following accounts:

> ODF Contracting Co., Inc., DBA BOSTON DRAIN JOB – account # 1132322445 – Citizens Bank
>
> ODF Contracting Co., Inc. – account # 1133941580 – Citizens Bank.

**Cirbee Affidavit, ¶6.**

In order to ensure that ODF's vendors on the Academy Homes II Project, and a separate project known as the Brunswick Gardens project, were being paid, and at the insistence of the Joint Venture, and Peabody Construction Co., Inc. ("Peabody"), a separate bank account, account # 1134915672, was set up at Citizens Bank, for payment solely of ODF vendors for Academy Homes II Project and the Brunswick Gardens Project.  Cirbee Affidavit, ¶7.  The majority, if not all, of ODF's vendor payments for work performed on the Academy Homes II Project and Brunswick Gardens Project, starting in July of 2002, with check # 991, through October 23, 2003 check #1208, were issued through checks drawn on this account for the specific purpose of payment for services provided on the Academy Homes II Project and the Brunswick Gardens Project. Cirbee Affidavit, ¶8.

3

The Joint Venture bookkeeper/Peabody bookkeeper maintained, at all times in his/her possession, all blank checks for the ODF - Citizens account # 1134915672, and drafted all checks drawn on the account, for signature by O. Dan Fernandez of ODF. Cirbee Affidavit, ¶9. The above process was to ensure that the vendors providing services to ODF on Academy Homes II Project and the Brunswick Gardens Project, which ODF had included on the VENDORS PAYABLE list for each billing period, were paid for their services performed on the those project, and paid in the amount, which was requested on the VENDORS PAYABLE list. This process was also to assure that payments made to ODF vendors, providing services to the Academy Homes II Project and Brunswick Gardens Project, on behalf of ODF were not misapplied to other ODF liabilities, and that all ODF vendor payments for Academy Homes II Project could be identified in an audit, which is a right to the owner under the terms of the Academy Homes II contract with the Joint Venture. Cirbee Affidavit, ¶10.

ODF, the Joint Venture and Peabody agreed that any payments drawn on the ODF - Citizens account # 1134915672, were to be applied to balances due on services provided on the Academy Homes II Project and Brunswick Gardens Project, only. Cirbee Affidavit, ¶11.

In response to allegations that I.U.O.E. Local 4 was owed outstanding sums by ODF, in January, 2004, Peabody forwarded to

4

Counsel for I.U.O.E. Local 4 an audit of payments made to I.U.O.E. Local 4. Cirbee Affidavit, ¶12. It is Peabody's position that I.U.O.E. Local 4 has been overpaid on the Academy Homes II Project given the fact that some amounts have been applied to ODF's general account with I.U.O.E. Local 4 and not exclusively to the Academy Homes, II Project. Cirbee Affidavit, ¶13.

In November, 2004, under the provisions of the Davis-Bacon Act, the United States Department of Labor ordered the Massachusetts Housing Finance Agency ("MHFA"), the owner of the project, to withhold the amount of $108,780.81 from the Joint Venture's November 2004 payment for unpaid wages and fringe benefits for Laborers and Operating Engineers employed by ODF Contracting on Academy Homes. Thereafter, MHFA made payment of these funds to the United States Department of Labor, Wage & Hour Division/Boston. Cirbee Affidavit, ¶14.

On or about November 2, 2004, I.U.O.E. Local 4 initiated this action under U.S.C. §270b as a claim on the Joint Venture's Labor and Material Payment Bond issued by Travelers. The Complaint seeks amounts allegedly owed to I.U.O.E. Local 4 for contributions by ODF. Upon examination of the Summons, it appears that service was made upon Travelers on or about December 9, 2004. Belyea Affidavit, ¶3.

5

On or about December 13, 2004, Travelers forwarded a copy of the Summons and Complaint to Peabody Construction Co., Inc. ("Peabody") for a tender of defense. See Affidavit of Marilynn Belyea, Paralegal, Peabody, (hereafter, "Belyea Affidavit") ¶3. Peabody received that facsimile, however, Peabody believed that the suit was no longer an active matter due to written confirmation by the Department of Labor that the funds had been paid, due to the Joint Ventures position that I.U.O.E. Local 4 had been over paid, and through oversight Peabody did not forwarded that material to counsel for handling. Cirbee Affidavit ¶15; Belyea Affidavit, ¶4.

Upon discovery that this matter had not been forwarded to counsel for handling, on January 25, 2005 Peabody immediately forwarded the Summons and Complaint to Counsel. Belyea Affidavit, ¶5.

Upon receipt of the facsimile, on January 25, 2005, Counsel for Travelers (and Peabody) telephoned Counsel for I.U.O.E. Local 4 and requested an additional 20 days on Travelers' behalf to answer or otherwise respond to the Complaint. Beltram Affidavit, ¶2. Counsel for I.U.O.E. Local 4 agreed to that request conditioned on a response from Peabody regarding amounts owed to I.U.O.E. Local 4 by a different subcontractors (ACT Abatement and Mac's Contracting) on a separate project (Newton High School). Beltram Affidavit, ¶3. Counsel for I.U.O.E.

6

Local 4 seemed to be frustrated over the Newton High School project and given the amount of information discussed on the Newton High School project, Counsel for Travelers noted that would discuss the same with Peabody and respond in a "day or so." Beltram Affidavit, ¶4. Despite that agreement, just two days later, on January 27, 2005, Counsel for I.U.O.E. Local 4 filed with this Court a Verified Request to Enter Default. Beltram Affidavit, ¶5.

It is important to further note that Counsel for I.U.O.E. Local 4 has acknowledged that the United States Government under the provisions of the Davis-Bacon Act had made a substantial payment to I.U.O.E. Local of $77,633.16 4 <u>after</u> the filing of the Complaint. Beltram Affidavit ¶6. In effect, that payment reduced the amounts sought in the Complaint from $108,539.49 to $30,906.33. Despite that payment, Plaintiff has not filed an Amended Complaint.

Counsel for I.U.O.E. Local 4 has further acknowledged that the $108,780.81, which was paid by the United States Government, was split between the Engineers and the Laborers with the Engineers receiving $77,633.16 and Laborers receiving $23,018.63.[2] Beltram Affidavit, ¶7.

---

[2] This acknowledgment fails to account for $8,129.02 of the monies withheld (e.g. $108,780.81 less $77,633.16 less $23,018.63 = $8,129.02)

7

Upon review of the docket, Default Judgment has not been entered at this time. Beltram Affidavit, ¶8.

III. <u>LAW AND ARGUMENT.</u>

    A.    <u>GOOD CAUSE EXISTS UNDER FED. R. CIV. P. 55(c) TO SET ASIDE THE DEFAULT AGAINST TRAVELERS.</u>

Fed. R. Civ. P. 55(c) states as follows:

> Setting Aside Default. For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b).

Since judgment has not entered against Travelers in this matter, the appropriate standard to be applied in this situation is "good cause." The term "good cause" is to be liberally construed. <u>United States v. $23,000 in United States Currency</u>, 356. F.3d 157, 164 (1st Cir. 2004). There is no precise formula for the "good cause" analysis. <u>KPS & Assoc., Inc. v. Designs by FMC, Inc.</u>, 318 F.3d 1, 10 (1st Cir. 2003). However, in <u>KPS & Assoc.</u> the United States Court of Appeals for the First Circuit stated as follows:

> Designs argues that we must look to three factors in scrutinizing the district court's ruling: (1) whether the default was willful; (2) whether setting aside the default would have prejudiced KPS; and (3) whether Designs has a meritorious defense. See id. at 76. . . .
>     The three factors cited by Designs are cited frequently in the cases as elements of the "good cause" analysis under Rule 55(c). <u>However, as we said in Coon, we would not "set forth any precise formula [for the good cause analysis], because we recognize that each case must necessarily turn on its own unique circumstances."</u> Id. As another court has put it, the three factors cited by

8

> Designs are not "talismanic," and we will consider others. CJC Holdings, Inc. v. Wright & Lato, Inc., 979 F.2d 60, 64 (5th Cir. 1992). In McKinnon v. Kwong Wah Restaurant, 83 F.3d 498 (1st Cir. 1996), we identified no fewer than seven factors a district court may consider: (1) whether the default was willful; (2) whether setting it aside would prejudice the adversary; (3) whether a meritorious defense is presented; (4) the nature of the defendant's explanation for the default; (5) the good faith of the parties; (6) the amount of money involved; (7) the timing of the motion [to set aside entry of default].Id. at 503. Thus Rule 55(c), as an "express[ion of] the traditional inherent equity power of the federal courts," 10A Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 2692 (1998), permits the consideration of a panoply of "relevant equitable factors." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 96 (2d Cir. 1993). The "Rule 55(c) determinations are case-specific" and "must, therefore, be made in a practical, commonsense manner, without rigid adherence to, or undue reliance upon, a mechanical formula." Gen. Contracting & Trading, 899 F.2d at 112. While the three factors identified by Designs are certainly "important" and "familiar," Conetta, 236 F.3d at 75, and a district court "should" consider them, Coon, 867 F.2d at 76, the failure of a district court to expressly consider them does not necessarily constitute an abuse of discretion. Likewise, the decision of the district court to accord dispositive weight to one of the familiar factors or other relevant equitable factors does not necessarily mean an abuse of discretion. (emphasis added)

KPS & Assoc., Inc, 318 F.3d at. 10-11.

In this matter, given the fact that Peabody believed that the suit was no longer an active matter due to written confirmation by the Department of Labor that the funds had been paid, due to the Joint Venture's position that I.U.O.E. Local 4 had been over paid, and its oversight that the materials had not been forwarded to Counsel for handling demonstrate that Peabody's actions were not willful. In fact, upon discovering that the materials had not be forwarded, Peabody acted diligently to

9

transmit these materials to Counsel. Travelers should not be punished for these actions.

Travelers asks this Court to accord more weight to the fact that a 20 day extension was agreed upon by Counsel, that the Plaintiff will not be prejudiced in any manner if the default is set aside due to the existence of a bond, and that meritorious defenses exist.

If this Court sets aside the default, such relief will not prejudice I.U.O.E. Local 4. I.U.O.E. Local 4 has only recently filed this litigation and has not expended any costs on discovery. Furthermore, if this Court ultimately finds sums due to I.U.O.E. Local 4, then its claim is protected by the existence of the payment bond issued by Travelers.

Also, Travelers has meritorious defenses to I.U.O.E. Local 4's claim. As noted above, it appears that I.U.O.E. Local 4's Complaint has not been amended to reflect $77,633.16 of payments from the Owner. Since I.U.O.E. Local 4 has in fact received these amounts, then the amount of the alleged monies due is significantly reduced to $30,906.33. As noted above, Peabody states that $108,780.81 has been withheld under the Davis-Bacon Act. Additionally, Counsel for I.U.O.E. Local 4 has acknowledged that the $108.780.81 was split between the Engineers and the Laborers with the Laborers receiving $23,018.63. The division of those withheld funds (along with the unaccounted $8,129.02) in

10

relation to this bond claim may be a defense to Travelers. Travelers should be permitted to conduct discovery on the division and payment of those funds.

Furthermore, based upon Peabody's position that I.U.O.E. Local 4 has been overpaid on the Academy Homes II Project, Travelers may be a meritorious defense to this action.

Finally, I.U.O.E. Local 4 in paragraph 22 of its Complaint alleges that after its letter of March 5, 2004 it received information concerning an additional $21,297.32 owed for contributions. I.U.O.E. Local 4 fails to allege that it gave proper notice of this revised amount within 90 days as required under U.S.C. §270b. Therefore, if I.U.O.E. Local 4 is not a claimant for those additional amounts under the bond (and has already been paid $77,633.16), then Travelers has a meritorious defense to this action.

IV. Conclusion

Based upon the foregoing facts, authorities and arguments, Defendant Travelers Casualty and Surety Company of America respectfully requests that this Court grant its Motion and issue an Order that provides the following:

> 1. Setting aside the entry of default entered against Peabody and Travelers on January 27, 2005;

2. Granting leave to file an answer late; Travelers' proposed answer is attached to the Motion as Exhibit "A";

3. Granting such other relief as it deems fair and just.

Respectfully submitted,

TRAVELERS CASUALTY AND SURETY
COMPANY OF AMERICA

By their attorneys,

_____
John J. McNamara
BBO No. 557882
Myles C. Beltram
BBO No. 628339
DOMESTICO, LANE & McNAMARA, LLP
161 Worcester Road
Framingham, MA 01701
(508) 626-9000

Dated:

CERTIFICATE OF SERVICE

I, Myles C. Beltram, hereby certify that the foregoing was served via first class mail, postage prepaid, upon Anne R. Sills, Segal, Roitman & Coleman, 11 Beacon Street, Boston, MA 02108 on this ____ day of February, 2005.

_____
Myles C. Beltram