UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LOUIS G. RASETTA and JOHN J. SHAUGHNESSY, as they are TRUSTEES, INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 4 HEALTH AND WELFARE, PENSION AND ANNUITY FUNDS, and LOUIS G. RASETTA and CHRISTOPHER BARLETTA, as they are TRUSTEES, HOISTING AND PORTABLE ENGINEERS LOCAL 4 APPRENTICE AND TRAINING FUNDS and INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 4, Plaintiffs<br><br>vs.<br><br>TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, Defendant | C.A. No. 04-12324 EFH |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO SET ASIDE DEFAULT AND FOR LEAVE TO FILE AN ANSWER

Defendant Travelers Casualty and Surety Company of America ("Travelers") have moved pursuant to Fed. R. Civ. P. 55(c) to set aside the default that was allegedly entered by this Court on January 27, 2005. Plaintiffs Louis G. Rasetta and John J. Shaughnessy, as they are Trustees, et al. (the "Funds") oppose the Defendant's Motion to Set Aside Default and for Leave to File an Answer on the following grounds.

I.  **DEFENDANT'S MOTION IS UNTIMELY**

According to Rule 55(c), in part, "For good cause shown the court may set aside <u>an entry of default</u> . . ." (emphasis added). Unfortunately, there is one glaring problem with the Defendant's motion – as of the date of Defendant's motion, and in fact, to date, this Court has

not entered default against Travelers. Although Plaintiffs did indeed file a Verified Request to Enter Default, which is attached hereto as Exhibit A, on January 27, 2005, the Court has not in fact entered default. Defendant's mistake may be a result of its rush to rectify its failure to file an answer or other responsive pleading in this matter for 61 days. Nevertheless, Travelers' Motion to Set Aside Default and for Leave to File an Answer is clearly untimely. There is not yet an entry of default to set aside, and thus Travelers' Motion is not ripe for consideration. As such, it must be denied.

## II.     EVEN IF TIMELY, DEFENDANT'S MOTION MUST BE DENIED

Even if the Defendant had waited to move to set aside default until such time as default had actually been entered against it, Defendant's Motion would have to be denied. The First Circuit Court of Appeals has stated that there is no precise formula for analyzing whether good cause has been shown, pursuant to Rule 55(c), to set aside an entry of default. KPS & Assoc., Inc. v. Designs by FMC, Inc., 318 F.3d 1, 10 (1st Cir. 2003). However, among the factors that the First Circuit regularly considers are whether the defendant's default was willful, whether setting aside the default would prejudice the non-movant, and whether the defendant has meritorious defenses. These factors are discussed in greater depth below.

### a.     Defendant's default was willful.

Travelers was properly served by the Funds on December 9, 2004, and no answer or responsive pleading had been received after the passage of 49 days. Finally, on January 27, 2005, the Funds decided to file their Verified Request to Enter Default.[1] See Exhibit A and Return of Service attached hereto as Exhibit B. By his own admission, Defendant's counsel did

not even initiate discussions with Plaintiffs' counsel regarding the suit filed against his client until the morning of January 25, 2005 – 47 days after the Complaint had been served. See Affidavit of Myles C. Beltram, attached to Defendant's Motion to Set Aside Default and for Leave to File an Answer, par. 2. Until that telephone call, Attorney Beltram and his client had been completely unresponsive. See Affidavit of Anne R. Sills ("Sills Aff."), attached hereto, pars. 12, 13.

During the January 25, 2005 telephone call, Plaintiffs' attorney Anne R. Sills indicated a willingness to grant the Defendant an extension of time to answer (the length of time was never discussed), but only upon the condition that Attorney Beltram investigate and provide her with some response to two other claims she was handling involving Travelers and/or Peabody Construction Co., Inc. ("Peabody"). Sills Aff., par. 14. Both matters were also being handled by Attorney Beltram's office. Id. Attorney Sills, while acknowledging that this was an unusual response, made this conditional offer because Attorney Beltram's office had been as unresponsive to her telephone calls and letters regarding these two other cases as it had been to the matter at hand. Sills Aff., par. 15. It had become apparent that unresponsiveness and stonewalling were the modus operandi of Peabody, which Attorney Sills had attempted to contact on numerous occasions prior to learning of its representation by Attorney Beltram's office, and the litigation strategy of choice for Attorney Beltram's office. Id. Attorney Beltram assured Attorney Sills that he would get back to her that afternoon. Sills Aff., par. 16. Yet, in continuing the trend, Attorney Beltram failed to call back that day, as he had promised. Sills Aff., par. 17. He also failed to call back the next day, and in fact never returned Attorney Sills' call. Id. The

---

[1] An additional 12 days passed after the Plaintiffs' Verified Request to Enter Default was filed before the Defendant's Answer was filed in this matter. Thus, a total of 61 days passed with the Defendant failing to file either an answer or another responsive pleading.

following day, January 27, 2005, Attorney Sills decided she had no choice but to file the Verified Request to Enter Default. Sills Aff., par. 18. Plaintiffs had waited one month past the deadline for a response. When a telephone call finally was received on the 47th day, it was nothing more than a far too late request for an extension of time, followed by a broken promise and further unresponsiveness. The Defendant's behavior demonstrated an utter disregard for the Plaintiffs' claim and for the requirements of the Federal Rules of Civil Procedure. See Chrysler Credit Corporation v. Macino, 710 F.2d 363, 367 (7th Cir. 1983) (failure to file an answer for over two months after it was due, despite the fact that extension of time was granted, is strong evidence that litigation was not handled with due diligence; court's denial of motion to vacate default is upheld); McMahan v. CCC Express Corp., 153 F.R.D. 633, 634 (N.D. Ind. 1994) (Rule 12 of the Federal Rules of Civil Procedure requires an answer to be filed within twenty days of service of the summons and complaint; "[p]arties are not free to ignore these rules and do so at their peril").

Under Rule 55(c), an entry of default may only be set aside for "good cause shown." Defendant claims that it has "good cause" for its failure to answer or otherwise respond within 20 days, in that "through oversight Peabody did not forward [the Complaint and Summons] to counsel for handling." See Travelers' Memorandum in Support of Motion to Set Aside Default and for Leave to File Answer, p. 6. According to the vice president of Peabody, the general contractor on this bonded job and the party responsible for defending this litigation on behalf of defendant surety Travelers:

> Peabody believed that the suit was no longer an active matter due to written confirmation by the Department of Labor that the funds had been paid and due to the Joint Venture's position that I.U.O.E. Local 4 had been over paid (sic).

See Affidavit of Steven F. Cirbee ("Cirbee Aff."), attached to Defendant's Motion to Set Aside Default and for Leave to File Answer, par. 15. Essentially, Peabody is claiming ignorance that it had to file an answer or otherwise respond to the Complaint. Peabody's claim of ignorance does not hold water and, in any event, certainly does not rise to the level of "good cause."

The Summons which was served by the Funds upon the Defendant clearly stated as follows:

> You are hereby summoned and required to serve upon Plaintiff's attorney . . . an answer to the complaint which is herewith served upon you, within 20 days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

A copy of the Summons is attached hereto as Exhibit C. Further, and importantly, Peabody is not a novice defendant. In Conetta v. Nat'l Hair Care Ctrs., Inc., the court stated that a critical factor in the equation to not set aside default was that the defendant company's president "knew in timely fashion that the amended complaint had been filed and chose for improper reasons not to defend the case." 236 F.3d 67, 75 (1st Cir. 2001). The court further held that while a "layman's misunderstanding of the law" might permit a finding of good cause, such a finding could not be made when a company president deliberately ignored a lawsuit. Id. In this matter, a search of the docket of this Court alone turned up 23 separate lawsuits involving Peabody Construction Co. dating back to 1988. As a large New England general contractor which has done work, according to its website, at the Boston Medical Center, Boston Public Library, Lowell Civic Center, and for the Massachusetts Bay Transit Authority, Peabody has previously received complaints against which it was obligated to defend. A large corporation that routinely defends

against lawsuits should not be allowed to claim ignorance and should not be granted a free pass on its failure to follow this Court's rules.

In <u>Admiral Home Appliances, a Div. of Magic Chef, Inc. v. Tenavision, Inc.</u>, the court held that a corporation had been put on full notice of service of a summons and complaint, and that its failure to timely transmit the documents to its attorney for a response was not a matter of mistake or inadvertence, but of arrogance and disregard of the potential consequences. 585 F.Supp. 14 (D. N.J. 1982). Thus, the court found no good cause for setting aside default. <u>Id.</u> Similarly, in the matter at hand, it takes a special type of arrogance for Peabody to claim that it did not believe the Funds' suit was an active matter because it was "the Joint Venture's position that I.U.O.E. Local 4 had been [overpaid]." Essentially, then, Peabody argues that it consciously chose not to respond to the Funds' Complaint and Summons because it did not agree with the Funds' claim. This rationale defies explanation. In addition, the Defendant's deceptiveness is also a symptom of its arrogance. The Defendant claims ignorance in its Motion as to the amount owed to the Funds, and as to the amount paid the Funds pursuant to its Davis-Bacon Act claim. In fact, as discussed in greater detail below, the Funds' Complaint stated the full amount owed by the Defendant, and the Defendant was on clear notice as a result of correspondence with Attorney Sills and with the U.S. Department of Labor that the Funds' claim had not been paid in full as a result of payments under the Davis-Bacon Act.

In any event, it is inexcusably neglectful on Peabody's part that, even if it suspected that the litigation had ceased, it did not provide a copy of the Complaint and Summons to its attorney until 47 days had passed since their receipt. This demonstrated an utter disregard by Peabody of the Funds' claim and of the potential consequences of ignoring the claim. Due diligence would have required that the company pursue a defense of this claim until the point at which it had

more than merely an amorphous belief that litigation had ceased. See Venegas-Hernandez v. Sonolux Records, 370 F.3d 183, 187 (1st Cir. 2004) (defendant claimed, in part, that its understanding was that plaintiffs' claims were already being dealt with outside of the suit filed against it, but court held that defendant was nonetheless obligated to learn specifics of suit and keep informed of its progress; entry of default upheld).

At best, the Defendant and his counsel can claim that their failure to answer or otherwise respond was a breakdown in communication. However, case law is clear that a breakdown in communication between a sophisticated client and its attorney is not good cause to have default removed. In Pretzel & Stouffer v. Imperial Adjusters, Inc., 28 F.3d 42 (7th Cir. 1994), the court decided the matter of a defendant that failed to file an answer for nearly four weeks after the deadline, much like the Defendant in this matter. In Pretzel & Stouffer, defense counsel claimed that he had difficulties communicating with his clients. The court held as follows:

> [W]e have previously found specifically that lack of communication between attorney and client was not a basis for showing of good cause in this context . . . Maintaining communication during the course of litigation is the responsibility of both attorneys and their clients. Mere lack of communication does not excuse compliance with the rules, or from the penalties for failing to do so.

Pretzel & Stouffer, 28 F.3d at 45. Thus, for the foregoing reasons, Defendant's default was absolutely willful.

### b. Setting aside an entry of default would prejudice the Plaintiffs.

The underlying suit is premised upon the fact that fringe benefit contributions continue to be owed to the Funds for workers on a construction project identified as Academy Homes II ("Academy"), for which a Joint Venture of three companies, including Peabody, served as the general contractor. See Complaint, par. 10. The Joint Venture executed and furnished a labor

7

and material payment bond with respect to the Academy job, naming itself as principal and Travelers as surety. Id. The Joint Venture's subcontractor, ODF, failed to pay contributions owed to the workers between January, 2003 and January, 2004. Complaint, par. 22. Therefore, Attorney Sills timely filed notice of the Funds' claim for contributions owed against the labor and material payment bond with Travelers on December 9, 2003 and with Peabody on December 24, 2003. Sills Aff., par. 2; Complaint, Exhibit D. On March 5, 2004, the Funds updated their claim to reflect additional contributions owed. However, by this time – three months after Travelers was first noticed of the Funds' claim – no Affidavit of Claim form had been received by the Funds. Sills Aff., par. 6. It was received soon thereafter, and on March 23, 2004 the Funds submitted the completed Affidavit of Claim form to Travelers. Sills Aff., par. 7. The Funds had not received a response to their claim as of November 1, 2004 – over seven months after submitting their Affidavit of Claim and nearly two years after contributions first became delinquent – and so, with no available options left to them, and with a fiduciary obligation under the Employee Retirement Income Security Act of 1974 ("ERISA") to collect the contributions and interest owed, they filed suit. Sills Aff., par. 9.

     Now, over two years after contributions first became delinquent, it would be extremely prejudicial to the Funds and the ODF employees they represent here to force them to wait any longer to receive these hard-earned and contractually-mandated benefits payments. Specifically, the Funds' members have not received annuity payments to their individual accounts for the past two years. Sills Aff., par. 8. Setting aside any default entered against the Defendant would further delay their receipt of the contributions owed and would essentially reward the Defendant for its willful ignorance of the Plaintiffs' claim. The Funds' trustees would also be prejudiced, because they have a fiduciary obligation under ERISA to collect all contributions and interest

owed the Funds. Sills Aff., par. 9. This fiduciary duty, if breached, leaves the trustees individually liable for the amounts owed. Thus, the longer that this matter drags on, the greater the possible exposure faced by the Funds' trustees.

Although Peabody did participate in initial, exploratory discussions with the Funds about its subcontractor ODF's delinquency, Peabody and Travelers have, since that time, been wholly unresponsive to the Funds' efforts to collect and/or otherwise resolve this dispute. There is no reason to believe that the Defendant's behavior will change if default is set aside and this case is allowed to move forward. The First Circuit Court of Appeals recognized as much when it considered that the entry of default "provides a useful remedy when a litigant is confronted by an obstructionist adversary," and "play[s] a constructive role in maintaining the orderly and efficient administration of justice." KPS & Associates, Inc., 318 F.3d at 13. Here, the Defendant's unresponsiveness and unacceptable excuses for not having responded to the Funds' Complaint have epitomized the notion of an "obstructionist adversary."

If the entry of default is set aside, the Funds will continue to wait for their benefits payments as the Defendant continues to play fast and loose with the Court's rules. In short, there is no greater prejudice to the hardworking families of Massachusetts than to allow for such a result.

  c.  **Defendant has no meritorious defenses.**

In Marziliano v. Heckler, the court stated that a party seeking to vacate an entry of default against it need not conclusively establish the validity of its defenses. 728 F.2d 151, 156 (2nd Cir. 1984). However, at the same time, the defenses that are presented cannot be, as they were in Marziliano, "extremely superficial and unusually equivocal." 728 F.2d at 156. The court singled out for special admonishment the fact that the defendant stated that it ". . . *may have a*

meritorious defense to plaintiff's motion" (emphasis in original). Id. Still, it should be noted that, even in Marziliano – a case in which the court found that the defendant's presentation of meritorious defenses was "weak" – the defendant was able to cite three cases for support in its memorandum. Id.

Conversely, in the Defendant's Memorandum, the "meritorious defenses" are backed up with sparse factual support and absolutely no legal support. Defendant provides little more than cursory and conclusory language with the hope that this Court will somehow find merit in the weak presentation. In relevant part, the defenses read as follows:

> The division of those withheld funds (along with the unaccounted $8,129.02) in relation to this bond claim *may be a defense to Travelers* . . . Furthermore, based upon Peabody's position that I.U.O.E. Local 4 has been overpaid on the Academy Homes II Project, Travelers *may be a meritorious defense to this action*" (sic) . . . Therefore, *if* I.U.O.E. Local 4 is not a claimant for those additional amounts under the bond . . . *then* Travelers has a meritorious defense to this action" (emphasis added).

This is exactly the sort of equivocal language that should not be allowed to pass as "meritorious defenses." The Defendant appears uncertain as to whether it has any meritorious defenses to this action; thus, this Court should have no reason to find that any such defenses exist, either. The Defendant did not expend any real effort demonstrating its meritorious defenses for one good reason – it does not have any.

The Funds' claim is for a sum certain, and although the amount owed increased over time before payment was received in mid-December, 2004 on their Davis-Bacon Act claim (after the instant Complaint was filed and served), the Funds provided the Defendant with clear notice of the revised amounts each step of the way. The Funds' initial claim in its December, 2003 bond claim notice letters to Peabody and Travelers was for $65,927.41. Sills Aff., par. 2. That amount

increased over subsequent months because the Funds are forced to rely on other parties to receive relevant payroll information. Sills Aff., pars. 2, 3. Employers have complete control over the certified payroll records on which hours worked and contributions owed are recorded; as such, the Funds rely on whatever certified payroll records they can obtain through Freedom of Information Act ("FOIA") requests plus remittance reports and payroll records submitted by the employees themselves in order to ascertain the amounts owed. Sills Aff., par. 3.

The Defendant was put on notice that the amount of the Funds' claim was likely to change in the Funds' December, 2003 bond claim notice letters. Sills Aff., par. 4. In those letters, the Funds stated that the amount claimed did not include contributions owed for work performed during the week ending September 6, 2003, for which records were missing, and for work performed after October 25, 2003. Complaint, par. 19; Exhibit D. In early 2004, using an FOIA request, the Funds obtained certified payroll records submitted by ODF for the period October 25, 2003 forward. Complaint, par. 20. Based on these new records, the Funds revised their claim and provided notice to Travelers via certified letter dated March 5, 2004 of their revised claim in the amount of $87,742.17, representing contributions owed through December 27, 2003. Complaint, par. 21; Exhibit E. Peabody vice president Steven F. Cirbee was copied on the March 5, 2004 letter. Id. Thereafter, the Funds received payroll records from former ODF employees demonstrating additional hours worked through January 10, 2004. Complaint, par. 22. Adding the contributions owed for those hours, and for hours owed for January and February, 2003 which were not included in the initial claim, the Funds determined that Travelers owed a total of $108,539.49 in delinquent contributions for the period January, 2003 through January, 2004, and claimed this amount in their Complaint. Id. Thus, either by letter or by pleading, the Defendant was on constant, clear notice of the amount in contributions owed.

The Defendant was also notified in December, 2004 when the Funds received payment on their claim under the Davis-Bacon Act. The $77,633.16 that was withheld from Peabody as a result of the Funds' claim was only a partial payment of the amount owed the Funds, leaving an outstanding liability of $30,906.33. Sills Aff., par. 11. Although a total of $108,780.81, in total, was withheld under the Davis-Bacon Act claim, this amount was intended to satisfy the claims of both the Funds and of the Massachusetts Laborers' Benefit Funds. Id. The Laborers were entitled to, and received, $23,018.63 from this withholding. Id. It is disingenuous of the Defendant to question the distribution of this payment at this juncture because Peabody was well aware that the claim was on behalf of both the Funds and the Laborers. In fact, Peabody vice president Steven F. Cirbee admits that the Davis-Bacon Act claim was for the benefit of both parties. Cirbee Aff., par. 14. Further, Peabody was notified via written confirmation from the U.S. Department of Labor that the Funds and the Laborers had been paid. Cirbee Aff., par. 15.

Therefore, the Defendant has no meritorious defenses to the Funds' claim. As such, $30,906.33 in contributions remains due and owing and Travelers has an obligation under the terms of its bond to pay that amount to the Funds, plus interest, damages, and attorneys' fees.

### III. CONCLUSION

Based upon the foregoing facts and arguments, Plaintiff Funds respectfully request that this Court deny the Defendant's Motion to Set Aside Default and for Leave to File an Answer, and allow any eventual entry of default against the Defendant to stand.

Respectfully submitted,

LOUIS G. RASETTA and JOHN J. SHAUGHNESSY, as they are TRUSTEES, I.U.O.E. LOCAL 4 HEALTH AND WELFARE FUND, et al,

By their attorneys,

/s/ Gregory A. Geiman
Anne R. Sills, Esquire
BBO #546576
Gregory A. Geiman, Esquire
BBO #655207
Segal, Roitman & Coleman
11 Beacon Street
Suite #500
Boston, MA 02108
(617) 742-0208

Dated: February 18, 2005

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above Memorandum in Support of Plaintiffs' Opposition to Defendant's Motion to Set Aside Default and for Leave to File an Answer has been served by first class mail upon Defendant's counsel, Myles C. Beltram, Esquire at Domestico, Lane & McNamara, LLP, 161 Worcester Road, Framingham, MA 01701 this 18th day of February, 2005.

/s/ Gregory A. Geiman
Gregory A. Geiman, Esquire

GAG/gag&ts
ARS 3118 03-391/memo-oppsetasidedflt.doc